<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Action No. 10-471 (SDW) |
| Plaintiff, | |
| v. | **OPINION** |
| NEVIN SHAPIRO, | September 20, 2024 |
| Defendant. | |

**WIGENTON**, District Judge.

Before this Court is *pro se* Defendant Nevin Shapiro's ("Defendant") Motion for Compassionate Release seeking a reduction of his sentence to time served under the First Step Act, 18 U.S.C. § 3582(c)(1)(A). (D.E. 53 ("Motion").) This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, Defendant's Motion is **DENIED**.

I.    **BACKGROUND AND PROCEDURAL HISTORY**

A.    **Criminal Proceedings**

On July 14, 2010, a grand jury indicted Defendant for his conduct as founder, owner, and Chief Executive Officer of Capitol Investment USA, Inc. (D.E. 12.) From January 2005 to November 2009, Defendant utilized the company to fraudulently procure $930 million from investors. (D.E. 57 at 2.) On September 15, 2010, Defendant pleaded guilty to Counts Two and Five of the indictment, for securities fraud and money laundering, respectively. (D.E. 19 at 16–17.)

At Defendant's sentencing on June 7, 2011, (D.E. 28), this Court considered the factors set forth in 18 U.S.C. § 3553(a), including Defendant's diagnoses of hypertension and hypertrophic cardiomyopathy (which were noted in the presentence report), Defendant's prior violent criminal history, and the nature of the crime itself for the purpose of imposing a "sufficient, but not greater than necessary" sentence. (D.E. 58 ("Sentencing Tr.") at 39:8–45:10.) In evaluating § 3553(a)'s factors, this Court paid particular attention to Defendant's leadership within the scheme, the scheme's duration, the economic losses, the number of defrauded individuals, and Defendant's lack of remorse during criminal proceedings. (Sentencing Tr. at 39:25–45:10.) This Court applied an upward variance and imposed on Defendant a 240-month sentence of imprisonment on Count Two to run concurrently to a 120-month sentence of imprisonment on Count Five, a three-year term of supervised release, and an order to pay $82,657,362.29 in restitution. (Sentencing Tr. at 45:7–10, 45:19–46:3, 47:15; D.E. 30.) Defendant was remanded to the Bureau of Prisons' ("BOP") custody. (D.E. 30 at 2.)

On June 14, 2011, Defendant timely filed a notice of appeal of his sentence. (D.E. 29.) On November 30, 2012, the United States Court of Appeals for the Third Circuit affirmed this Court's judgment, concluding that this Court "adequately explained why it chose to vary upward" and that "the sentence was substantively reasonable." *United States v. Shapiro*, 505 F. App'x 131, 132 (3d Cir. Nov. 30, 2012). On February 28, 2014, Defendant moved to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (D.E. 42); *Shapiro v. United States*, No. 14-1316, 2017 WL 896987, at *1 (D.N.J. Mar. 6, 2017). On March 6, 2017, this Court denied Defendant's motion. *Shapiro*, No. 14-1316, at *1.

On June 11, 2020, the BOP transferred Defendant to home confinement under the BOP's authority under the Coronavirus Aid, Relief, and Economic Security ("CARES") Act. (D.E. 57 at

3); *see* CARES Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (2020) (expanding the authority of the Bureau of Prisons under 18 U.S.C. § 3624(c)(2) to place a prisoner in home confinement in light of COVID-19). Defendant is currently under the supervision of RRM Miami, a residential reentry management field office that contracts with the BOP. (D.E. 57 at 3–4; D.E. 53-1 at 2.) At present, Defendant has completed 170 months of his 240-month sentence. (D.E. 56 at 2.) He has served 121 of these months in prison. (D.E. 57 at 4.) Defendant's anticipated release date is June 29, 2026. (D.E. 56 at 2.)

On January 28, 2023, Defendant submitted a request for compassionate release to RRM Miami. (D.E. 53-1 at 2.) He did not receive a response. On March 27, 2023, Defendant filed the present Motion *pro se* with this Court. (D.E. 53.) The Federal Public Defender filed a supplemental brief for Defendant's Motion on August 29, 2023. (D.E. 56.) The Government opposed the Motion on September 26, 2023. (D.E. 57.)

### B.    Factual Developments

While in prison, Defendant was sanctioned for misconduct three times. (D.E. 57-1, Ex. A.) The first violation was for receiving money through another inmate to conduct an interview with "members of the media" without approval. (*Id.*; D.E. 53 at 16.) The second was for concealing a piece of mail within another piece of mail to obscure the recipient, allegedly to protect Defendant and the recipient. (D.E. 53 at 17.) The third was for writing a letter to a journalist who interpreted it as a threat; however, it was not deemed a credible threat under the prison's conduct code. (*Id.*) The last disciplinary infraction occurred in October 2013. (*Id.*; D.E. 57-1, Ex. A.)

Defendant is on home confinement in Florida. (D.E. 53 at 2.) Defendant lives near his father and stepmother's residence. (*Id.* at 2–3, 9.) His father, Lawrence Shapiro, is 78 years old and had a stroke on August 5, 2020. (*Id.* at 2.) Defendant currently shops for Lawrence and takes

3

him to medical appointments, all with permission from RRM. (*Id.*) Defendant's mother, Ronnie

Adams, was scheduled to relocate to Boca Raton from Canada in April 2023. (*Id.* at 3.) She

suffered a stroke while Defendant was incarcerated and has been diagnosed with dementia. (D.E.

53 at 3.) Her health is expected to decline, and Defendant plans on being responsible for her

medical care as well as his father's. (*Id.*) Defendant also believes he would be better able to

facilitate his mother's move to Florida if he were on supervised release. (D.E. 56 at 3 n.3.)

In addition to his parents' declining health, Defendant himself has several medical

conditions. (D.E. 53 at 12.) Defendant suffers from hypertrophic cardiomyopathy since 2003 and

been diagnosed with extreme hypertension. (*Id.*) These conditions were present at the time of

sentencing and were noted in the presentence report. (D.E. 57 at 11.) Since his home confinement

term, Defendant has been hospitalized twice for these conditions. (D.E. 53 at 12.) While in the

BOP's custody, Defendant was diagnosed with basal cell carcinoma, which was removed from his

face and head, resulting in eighty-five stitches. (*Id.*)

During incarceration and home confinement, Defendant has invested in himself and

attempted to contribute to society. (*Id.* at 3.) Defendant cooperated with law enforcement to

recover forty million dollars in funds connected with his fraudulent scheme, and he is a witness in

a civil trial to recover more funds. (*Id.* at 4–5.) Defendant participated in a six-month, faith-based

program while incarcerated, taught some sections of the course, and participated in at least thirty-

six other voluntary courses. (*Id.* at 3, 14–15.) Defendant also volunteers to speak at a fraud and

forensic accounting course at Fordham University, where he discusses "the consequences of crime

and the perspective of a white-collar perpetrator." (*Id.* at 13.)

## II.    LEGAL STANDARD

Although a district court generally has limited authority to modify a federally imposed sentence once it commences, *see Dillon v. United States*, 560 U.S. 817, 824–25 (2010), the First Step Act ("FSA") permits district courts to grant compassionate release where there exist "extraordinary and compelling reasons" to reduce a sentence. 18 U.S.C. § 3582(c)(1)(A)(i). Under the FSA, "a defendant seeking a reduction in his term of imprisonment bears the burden of establishing both that he has satisfied (1) the procedural prerequisites for judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release." *United States v. Epstein*, No. 14-287, 2020 WL 1808616, at *2 (D.N.J. Apr. 9, 2020). After finding that procedural prerequisites have been satisfied, a court may reduce an inmate's sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) "if the court finds that the sentence reduction is (1) warranted by 'extraordinary and compelling reasons'; (2) 'consistent with applicable policy statements issued by the Sentencing Commission'; and (3) supported by the traditional sentencing factors under 18 U.S.C. § 3553, to the extent they are applicable." *United States v. Andrews*, 12 F.4th 255, 258 (3d Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)).

## III.    DISCUSSION

RRM received the Defendant's request for compassionate release and did not respond or file a motion on Defendant's behalf. (D.E. 53 at 7; D.E. 53-1, Ex. A.) Defendant waited more than thirty days after the BOP received his request to file the present Motion. (D.E. 53-1, Ex. A.) Therefore, he has met the FSA's procedural prerequisites. 18 U.S.C. § 3582(c)(1)(A). Next, this Court will consider whether Defendant has demonstrated "extraordinary and compelling reasons" to warrant a sentence reduction as required by 18 U.S.C. § 3582(c)(1)(A).

### A.    Extraordinary and Compelling Reasons

When determining whether Defendant's reasons rise to the level of extraordinary and compelling, a district court may consider the "text, dictionary definitions, and the policy statement" to "give shape to this otherwise amorphous phrase." *See Andrews*, 12 F.4th at 260. The relevant policy statement ("Policy Statement"), promulgated by the United States Sentencing Commission, provides six categories of circumstances which may be extraordinary and compelling, including: medical circumstances, family circumstances, and "other." U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") §§ 1B1.13(b)(1), (3) & (5) (U.S. SENT'G COMM'N 2023). Although the Policy Statement is not binding for prisoner-initiated FSA cases in the Third Circuit, it "still sheds light on the meaning of extraordinary and compelling reasons . . . 'guid[ing] discretion without being conclusive.'" *Andrews*, 12 F.4th at 260 (quoting *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)).

Here, Defendant argues that his need to care for his parents, medical conditions, and successful reentry to society constitute extraordinary and compelling reasons. (D.E. 56 at 2; D.E. 53 at 9–12.) He also claims that his case presents unique circumstances meriting review given the significant administrative costs that could be saved if he were released and the precarious possibility of reincarceration he faces. (D.E. 56 at 4–5, 7.) This Court will consider each of these in turn.

### i.    Need to Care for Defendant's Parents

Defendant argues that his need to care for his parents presents extraordinary and compelling circumstances. (D.E. 53 at 9–12.) Defendant contends that he is responsible for taking his father to medical appointments and running errands, maintaining his father's home, and handling odd jobs on behalf of his father after his father suffered from a stroke in 2022. (*Id.* at 9, 11.) Defendant's mother also suffered a stroke and has been diagnosed with dementia. (*Id.* at 3.)

She resides in Canada, but Defendant expects her to relocate to Florida in the future.  (*Id.*)

Defendant maintains that unlike other inmates who may have ailing parents, in his situation his

parents "have no other suitable options."  (*Id.* at 11.)

The Policy Statement lists several examples of family circumstances that may be

extraordinary and compelling, including "[t]he incapacitation of the defendant's parent when the

defendant would be the only available caregiver for the parent."  U.S.S.G. § 1B1.13(b)(3)(C).

However, courts in the Third Circuit have generally not found extraordinary and compelling

reasons where the defendant fails to establish that he or she is the sole caregiver.  *See, e.g.*, *United*

*States v. Coles*, Nos. 14-496-2 & 14-496-3, 2021 WL 1210109, at *3 (E.D.Pa. Mar. 31, 2021)

(denying the defendant's motion for compassionate release because he failed to demonstrate that

his sixty-five-year-old mother required "immediate care" and that he was the only suitable

caregiver), *aff'd on other grounds* No. 21-1715, 2022 WL 1552123 (3d Cir. May 17, 2022); *United*

*States v. Dunich-Kolb*, No. 14-150, 2022 WL 580919, at *8 (D.N.J. Feb. 14, 2022) ("One common

thread, whether relief is granted or denied, is the requirement that the prisoner be the *only* person

available to provide care to a seriously ill relative.").

Where a defendant does not produce sufficient evidence that they are the sole caregiver or

where evidence exists that the defendant is not the sole caregiver, courts typically deny relief.  *See,*

*e.g.*, *Coles*, 2021 WL 1210109, at *3; *United States v. Tobolsky*, No. 21-00303, 2024 WL 323476,

at *3 (D.N.J. Jan. 29, 2024) (rejecting the defendant's claim that he was his mother's only caregiver

given the lack of supporting evidence and an e-mail in which the defendant's father acknowledged

the availability of other caregivers); *United States v. Babbs*, No. 15-195, 2023 WL 4686323, at *5

(D.N.J. July 21, 2023) (finding the record belied the defendant's assertion that he was the only

available caregiver where the defendant himself admitted his siblings maintained active

relationships with their mother and the defendant's aunt resided in New Jersey). "It is not uncommon . . . for a criminal sentence to impose burdens, sometimes severe ones, on family members." *Dunich-Kolb*, 2022 WL 580919, at *8. Yet, "[t]he impact on family members is an inherent feature of any term of incarceration." *United States v. Cromwell*, No. 19-0057, 2021 WL 3561244, at *3 (D.N.J. Aug. 12, 2021).

Here, Defendant has not established that he is the only caregiver for his father. In fact, Defendant admits that his father resides with his wife Frances. (D.E. 53 at 4.) There is no evidence that Frances is unable or unwilling to care for Defendant's father. Therefore, Defendant's need to provide care to his father is not an extraordinary and compelling reason. Relatedly, Defendant does not allege that he is his mother's sole caregiver and admits that his mother resides in another country. (D.E. 53 at 3.) Defendant claims he "will become [his mother's] primary care giver," and that "she has no caretaker in Canada." (*Id.* at 3, 12.) Yet, Defendant offers no evidence that his mother plans to relocate to Florida. These facts do not establish that Defendant would be her sole caregiver.

Defendant "believes he would be better able to work to facilitate [his mother's] move were he on supervised release rather than home confinement." (D.E. 56 at 3 n.3.) As the Government points out, however, "[Defendant] has not established how exactly a reduction in sentence would facilitate such a move." (D.E. 57 at 10.) The same is true of Defendant's father. The Government contends that "[Defendant] has not specified any restrictions that home confinement has placed on his ability to care for his father." (*Id.* at 11.) This Court finds the Government's arguments persuasive. Defendant has failed to apprise this Court of why he would be unable to carry out his caretaking responsibilities if he continues to remain on home confinement.

Notably, since being placed on home confinement by the BOP, Defendant has fulfilled his caretaking responsibilities for his father while complying with the terms of his confinement. (D.E. 53 at 2, 4.) This makes Defendant's situation readily distinguishable from each case cited in his brief. In each of those cases, the defendant was granted compassionate release from prison to take care of an ailing parent at home. *See United States v. Riley*, No. 2:12-cr-62, 2020 U.S. Dist. LEXIS 82909, at *1–2 (D. Vt. May 12, 2020) (granting the defendant's motion for compassionate release where the defendant's father submitted a letter detailing his medical condition and confirming that the defendant was the only family member available to care for him); *United States v. Hernandez*, No. 16-20091, 2020 WL 4343991, at *1 (S.D. Fl. Apr. 3, 2020) (granting compassionate release to a defendant who was the only potential caregiver for his eighty-four-year-old mother who suffered from degenerative ocular disease, cancer, severe atherosclerosis, and mobility limitations); *United States v. Nagi*, No. 06-20465, 2021 WL 5114579, at *5 (E.D. Mich. Nov. 3, 2021) (finding extraordinary and compelling circumstances where the defendant was his mother's only available caregiver in light of his mother's strict religious observances and the unavailability of defendant's siblings and other family members).

For the reasons stated above, Defendant's need to care for his parents is not an extraordinary and compelling reason.

### ii.   Defendant's Medical Conditions

Defendant fails to provide adequate support for his argument that his medical conditions are extraordinary and compelling. A medical condition is extraordinary and compelling where the defendant is suffering from a terminal illness or is suffering from a condition that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. §§ 1B1.13(b)(1)(A), (B).

Here, Defendant does not allege that his medical conditions are terminal or that they diminish his ability to provide self-care.  (D.E. 53 at 12.)  Courts have held that when a defendant is unable to show that he or she will not recover from an illness or show that an illness substantially decreases his or her ability to provide self-care within a correctional environment, extraordinary and compelling circumstances do not exist.  *See, e.g.*, *United States v. China*, No. 15-0203, 2024 WL 1715329, at *3 (D.N.J. Apr. 22, 2024) (holding that defendant's obesity and Type Two diabetes were insufficient to find an extraordinary and compelling reason for compassionate release, particularly when these conditions were being treated).  Regarding his hypertension and hypertrophic cardiomyopathy, Defendant concedes that he is "managing his care through his own diligence" and that he has been hospitalized twice for his conditions while on home confinement due to "extreme hypertension related to pre-stroke symptoms."  (D.E. 56 at 5; D.E. 53 at 12.) Defendant also admits that his basal cell carcinoma was treated.  (D.E. 53 at 12.)  As such, Defendant has not shown that his ability to provide self-care has been substantially diminished, either while incarcerated or on home confinement.

Defendant contends that, if he were remanded to the BOP's custody, he would not receive the long-term care necessary for his conditions.  (D.E. 56 at 6; D.E. 53 at 12.)  As an initial matter, the Policy Statement describes long-term care that is not being presently provided; and here, Defendant is receiving medical care while on home confinement.  *See* U.S.S.G. § 1B1.13(b)(1)(C). Next, while there is a possibility that Defendant might be remanded to the BOP's custody, the risk of remand is relatively low as Defendant has "successfully complied with the strict rules of his home confinement."  (D.E. 53 at 3–4.)

Even if Defendant were incarcerated again, there is no evidence that he would not receive care going forward or that his care is specialized enough to be extraordinary and compelling.

Courts have found that prisoners with similar medical conditions did not have extraordinary and compelling reasons to qualify for compassionate release from incarceration. *See, e.g.*, *United States v. McDonald*, No. 09-656, 2020 WL 3638280, at *5, *8 (D.N.J. July 2, 2020) (denying compassionate release to a defendant who suffered from hypertension, vulnerability to strokes, heart disease, and had a history of lung cancer); *United States v. Alexander*, No. 19-032, 2020 WL 2507778, at *4 (D.N.J. May 15, 2020) (denying compassionate release to a defendant who suffered from obesity and hypertension where medical records showed that the BOP was "adequately managing [his] medical care"). The relatively small risk of reincarceration and lack of evidence that care would be inaccessible defeat Defendant's claim that his need for ongoing care is an extraordinary and compelling reason.

Further, Defendant's diagnoses of hypertension and hypertrophic cardiomyopathy existed at the time of his sentencing and were noted in the presentence report. (D.E. 57 at 11.) Because compassionate release is an exception to the rule against disturbing federally imposed sentences, courts have not reconsidered medical conditions that existed at sentencing where there is no evidence that the BOP cannot "appropriately address" a defendant's ailments. *McDonald*, 2020 WL 3638280, at *5; *United States v. Burd*, No. 21-086, 2023 WL 3271167, at *3 (D.N.J. May 5, 2023) ("Defendant has not shown that his health conditions are materially different from those the Court considered at sentencing."). As discussed, Defendant's medical needs can be met on home confinement or upon reincarceration. Having weighed these factors at sentencing, this Court need not reconsider them absent further medical evidence.

For the reasons stated above, Defendant's own medical conditions are not extraordinary and compelling reasons to grant compassionate release.

### iii.   Other Extraordinary and Compelling Reasons

Defendant argues that his successful reintegration into society amounts to an extraordinary and compelling reason for compassionate release. (D.E. 56 at 3–4.) While this Court commends Defendant's progress and reentry to society, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). This is especially true when, as here, a court finds no independent extraordinary and compelling reasons. *United States v. Bledsoe*, No. 22-2022, 2022 WL 3536493, at *3–4 (3d Cir. Aug. 18, 2022) ("[C]laimed efforts in furtherance of rehabilitation, while commendable, are 'expected'; they are, standing alone, neither 'extraordinary' nor 'compelling' for purposes of the compassionate-release standard.") (internal citation omitted).

Defendant also argues that "[c]oncerns over the effective and judicious use of resources are extraordinary and compelling reasons warranting" relief. (D.E. 56 at 7.) While this Court appreciates concerns over the allocation and use of governmental resources, the cost of imposing a carceral sentence does not amount to an extraordinary and compelling reason. *See United States v. Saadeh,* No. 15-618-01, 2021 WL 3400837, at *2 n.2 (D.N.J. Aug. 4, 2021), *aff'd*, No. 21-2641, 2021 WL 5822395 (3d Cir. Dec. 7, 2021) ("[The d]efendant also cites . . . the cost associated with his continued incarceration. While these circumstances are unfortunate, they are insufficient to justify compassionate release.") (internal citations omitted). Additionally, these costs were considered at sentencing and cannot form the basis for compassionate release.

### B.   § 3553(a) Factors

Even where extraordinary and compelling reasons are established, this court must consider the § 3553(a) factors, to the extent that they are applicable. 18 U.S.C. § 3582(c); 18 U.S.C. §

3553(a).  Despite not finding any extraordinary and compelling factors, this Court will briefly review the § 3553(a) factors.[1]

First, Defendant's history and characteristics weigh against reducing his sentence. Although Defendant has alleged cooperation with law enforcement, education, and rehabilitation, (D.E. 53 at 3–5, 13–15), this is insufficient to overcome Defendant's entire history.  At sentencing, this Court considered Defendant's prior criminal record.  (Sentencing Tr. at 39:13–24.)  This Court chose to impose an upward variance because of Defendant's character and the severity of the crime.  (*Id.* at 43:23–45:10.)  Defendant's attitude toward his crime and his lack of personal responsibility for his involvement were noted.  (*Id.* at 42:4–43:8.)  This Court also indicated that at sentencing, Defendant's concern was primarily about how he and his family had been affected. (*Id.* at 39:25–40:2.)  Although Defendant promised to "[make] all the victims whole," this Court decided to vary upward because of the substantial harm suffered by the victims.  (*Id.* at 42:4–5, 45:7–10.)  While it is commendable that Defendant has made steps toward fulfilling his promise, this Court will not disturb the sentence it imposed, having already taken this into account.

Further, Defendant had three disciplinary infractions while incarcerated.  (D.E. 57-1, Ex. A.)  Defendant argues that the relative severity of the offenses, his clean record in recent years, and his rehabilitation weigh in favor of a reduction in sentence.  (D.E. 12–18.)  However, courts have found that a "mixed disciplinary record" does not overcome the §3553(a) factors, even where a defendant has only old infractions and has shown rehabilitation.  *See United States v. Fremin*, No. 96-114, 2024 WL 1479155, at *7 (D.N.J. Apr. 5, 2024).  !

---

[1] § 3553(a) factors include "'the history and characteristics of the defendant,' and 'the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the offense[, and] . . . to afford adequate deterrence to criminal conduct.'"  *United States v. Pawlowski*, 967 F.3d 327, 329–30 (3d Cir. 2020) (internal citations omitted) (quoting 18 U.S.C. § 3553).

The seriousness of the offense, respect for law, and just punishment all weigh against a reduction in sentence. These factors were covered thoroughly at sentencing, where this Court recognized that Defendant conducted "extensive, brazen, [and] massive fraud." (Sentencing Tr. at 42:8–9.) Defendant provides no reason why the offense should be interpreted as less severe today, nor does he point to any case that reduced a similarly situated defendant's sentence. Accordingly, this Court will not disturb his sentence.

Finally, reducing Defendant's sentence would not amount to adequate deterrence from criminal conduct. Defendant has served approximately seventy percent of his sentence, having served approximately fifty percent of it in prison. (D.E. 57 at 14.) Courts have denied compassionate release where it would require "a substantial sentencing reduction." *Pawlowski*, 967 F.3d at 331. Reducing Defendant's sentence to time served would eliminate six years of his sentence that this Court considered necessary at sentencing. This would not serve the goal of deterrence for similar crimes. Moreover, with only half of his sentence served in prison, Defendant would have a substantially less severe sentence than was initially imposed and be rewarded for good behavior during home confinement, which is not available to all inmates. Thus, it would create an "unwarranted sentence disparit[y] among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6); *see Kimbrough v. United States*, 552 U.S. 85, 107 (2007) (noting that "uniformity remains an important goal of sentencing").

After considering the relevant § 3553(a) factors and the entire record, this Court finds that the § 3553(a) factors weigh against granting compassionate release. Even if Defendant could establish extraordinary and compelling reasons, his failure to demonstrate that the § 3553(a) factors weigh in favor of reducing his sentence are detrimental to his request for relief.

## IV.    Conclusion

For the foregoing reasons, Defendant's Motion for Compassionate Release is **DENIED**.

An appropriate order follows.

    /s/ Susan D. Wigenton
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:     Clerk
cc:      Parties